UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **LORENZO JEFFERSON #355182** | **CIVIL ACTION NO. 5:14CV2264 SEC P** |
| **VERSUS** | **JUDGE ELIZABETH E. FOOTE** |
| **WARDEN LOUISIANA STATE PENITENTIARY** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* Petitioner Lorenzo Jefferson, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant Petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on July 2, 2014. [doc. # 1]. Petitioner attacks his second degree murder conviction, his attempted second degree murder conviction, and the concurrent life and forty-six year sentences imposed by the First Judicial District Court, Caddo Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

## Background

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal as follows:

> Lorenzo Jefferson was arrested for the shooting of Noel Steele ("Steele") and Gary Maxie, Jr. ("Maxie"). The crime occurred as the result of a shooting in the defendant's backyard, 3120 Lakeshore Drive, around three in the morning on July 13, 2009. While the house was his residence, Jefferson also rented rooms in the house for commercial purposes. Steele, the defendant's friend and one of the victims, maintained a barber shop and lived there on a part-time basis. This residence also contained a music studio and tattoo shop. As a result of all this activity, the backyard was used as a parking lot.
>
> Around two in the morning on July 13, 2009, Steele needed to drop off some supplies at his other residence, but he did not own a car. Since Steele and his fianceé, Patsy Davis ("Davis"), had just had a very heated disagreement, Davis refused to let him

borrow her car. Thereafter, Jefferson gave him permission to borrow his Jeep Cherokee. Sometime after Steele left, Jefferson called him and angrily demanded that he immediately bring his car back.

On his way home, Steele had to stop at a gas station, where he saw his friend, Maxie. After Steele explained that he had to return Jefferson's car, Maxie and his passenger, Demondrick Jackson ("Jackson"), followed Steele to the house on Lakeshore Drive because Maxie wanted to further talk to Steele about something. While Steele went to return the keys, Maxie and Jackson stayed in the car in the backyard.

While washing dishes in the kitchen, Davis noticed that Maxie's car had arrived in the parking lot in the backyard. As she turned to inform Jefferson of the visitor, he was already moving toward the backyard and Davis noticed that Jefferson had a gun sticking out of his pants.

When Steele approached the back door, the defendant stood in the doorway, blocking his entrance. At this time, Jackson testified he saw a gun sticking out of Jefferson's pants; yet, Steele testified that he did not see the gun. While the two were talking, Steele testified that Jefferson just suddenly turned around and shot him. After the first shot, Steele immediately jumped from the elevated porch area and crawled under the house to hide. After clearly seeing Jefferson shoot Steele, Jackson testified that he climbed out of Maxie's car through the rear door on the driver's side, the farthest side away from the defendant's location, and ran. As he was running, Jackson stated that he heard Maxie say, "hold up," and then Jackson heard several more shots being fired.

All of the witnesses testified that they heard at least two or three more shots, but none of them saw Jefferson shoot Maxie, who was killed. Davis, who was in the kitchen, heard the first shot and froze. After all shots had been fired, Jefferson came back inside and Davis asked him what happened. According to her, the defendant went to a locked closet and soon returned with an AK–47. Davis then saw Jefferson drive away in Maxie's white Toyota Corolla. After the defendant left and Davis realized that Maxie had been shot, she called the police and reported the incident.

After fleeing the scene of the shooting, Jefferson ran a red light and hit another vehicle. Jefferson attempted to flee the scene of that accident in the vehicle, but the car died a few blocks away forcing the defendant to flee on foot. Ultimately, Jefferson was arrested at Willis Knighton Hospital on Greenwood Road after police received a call regarding a suspicious person. Upon locating the defendant and giving him his Miranda rights, police searched his person and found car keys. Officers soon discovered that these keys started the white Toyota Corolla that had been involved in the hit and run. The car had blood on the door and was owned by the victim, Maxie.

> Jefferson was taken to police headquarters, and before he gave his statement, he was again advised of his rights. According to the defendant, Davis opened the back door and then "all hell broke loose." The defendant stated that he saw a black man with braids fleeing the scene and assumed this man or Davis was the shooter. After the shooting started, the defendant stated that he got in Maxie's vehicle in order to escape. At all times, the defendant has denied his involvement in the shooting.
>
> On September 25, 2009, the grand jury charged Jefferson by bill of indictment for the second degree murder of Maxie, in violation of La. R.S. 14:30.1. This indictment was amended on April 1, 2011, and at this time, the defendant was additionally charged with the attempted second degree murder of Steele.
>
> After a two-day bench trial, the defendant was convicted as charged. On June 9, 2011, Jefferson was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for his second degree murder conviction to run concurrent with his 46–year sentence for the attempted second degree murder conviction.

*State v. Jefferson*, 91 So. 3d 1007, 1009-11 (La. App. 2 Cir. 2012).

On November 2, 2011, Petitioner, represented by counsel, appealed to the Second Circuit Court of Appeal and argued that the imposed sentence was excessive and that the evidence adduced at trial was insufficient to support his convictions. [doc. # 16-5, p. 90]. On January 6, 2012, Petitioner filed a *pro se* brief and requested an "error patent review" of the indictment and amended indictment. *Id.* at 124. The Second Circuit affirmed Petitioner's convictions and sentences on March 7, 2012. *Jefferson*, 91 So. 3d at 1015. The Louisiana Supreme Court denied Petitioner's subsequent application for writ of certiorari on November 2, 2012. [doc. # 16-6, p. 83].

On February 25, 2013, Petitioner filed a *pro se* application for post-conviction relief in the trial court and claimed that his trial counsel was ineffective, the evidence presented was insufficient to sustain the convictions, and the State improperly amended the original indictment. *Id.* at 84. The trial court denied the application on April 15, 2013. *Id.* at 134. The Second

3

Circuit Court of Appeal denied Petitioner's application on September 12, 2013. *Id.* at 184. The Louisiana Supreme Court, on May 23, 2014, likewise denied Petitioner's application. *Id.* at 257.

Petitioner filed the instant Petition on July 2, 2014. [doc. # 1]. He raises the following assignments of error: (1) the indictment was defective; (2) ineffective assistance of counsel; and (3) insufficient evidence. *Id.*

The matter is now before the Court.

## Law and Analysis

I.  **Standard of Review – 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as


opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**II.     Petitioner's Claims**

A. Claim One: Defective Indictment

Petitioner claims that the amended indictment was defective for three reasons: (1) it was not supported by sufficient evidence; (2) the grand jury foreman did not endorse it; and (3) it was not returned in open court. [doc. #s 1-2, p. 6-7; 17, p. 8-14]. "[T]he sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984) (citation omitted). However, federal courts need not address the convicting court's jurisdiction if the sufficiency of the indictment "was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case." *Millard v. Lynaugh*, 810 F.2d 1403, 1407 (5th Cir. 1987). This issue is squarely presented to, and decided by, a state's highest court even if the state's highest court denies the application without a written order. *See Evans v. Cain*, 577 F.3d 620, 624-25 (5th Cir. 2009); *Alexander v. McCotter*, 775 F.2d 595, 599 (5th Cir. 1985).

Here, the Louisiana Court of Appeal reviewed Petitioner's indictment and expressly held that "no errors patent were found." *Jefferson*, 91 So. 3d at 1014. Thereafter, the Louisiana Supreme Court denied further review without comment. [doc. # 16-6, p. 83]. In so doing, the Louisiana Supreme Court implicitly held that the trial court had jurisdiction over the case. *See Alexander*, 775 F.2d at 599 ("By refusing to grant the appellant relief . . . the Texas Court of Criminal Appeals has necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose."). Accordingly, Petitioner's challenge to that implicit holding is not cognizable. *See McLamb v. Harget*, 68 F.3d 469 (5th Cir. 1995) (holding that the petitioner's claim was precluded when the Mississippi Supreme Court denied the claim without opinion); *Evans*, 577 F.3d at 624 (observing that when a state's highest court has held that the trial court had jurisdiction, then the issue of the trial court's jurisdiction "is a question foreclosed to a federal habeas court."). This claim should be **DENIED**.

B. Claim Two: Ineffective Assistance of Counsel

Petitioner next claims that his trial counsel rendered ineffective assistance when counsel failed to move to quash the allegedly defective indictment. In this claim, Petitioner contends that the indictment was defective because it was in "short-form," it did not establish the elements of the charged crime, it was not endorsed by the grand jury foreman, it was not returned in open court, and it was not supported by sufficient evidence. [doc. #s 1-2, p. 5; 17, p. 4].

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254. *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thornton*, 646 F.3d 199 (5th Cir. 2011). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the petitioner of his constitutional right to a fair trial or deprives the petitioner of some

6

other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Further, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689-90. The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *U.S. v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim,

*Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *U.S. v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

Finally, when review is governed by the AEDPA, review of the state court's resolution of the ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009), since the question is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Importantly, "[t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard," because the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786. To obtain relief, a petitioner must show that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Turning to the instant case, the state *habeas* court, relying on the appellate court's prior decision on direct review, held that Petitioner failed to demonstrate the requisite prejudice. [doc. # 16-6, p. 135]. It held specifically, "The appellate court considered the indictment and the amended indictment for errors patent and found no such errors." *Id.* According the appropriate deference, this Court finds that the state *habeas* court's ruling was not so lacking in justification that there was an error well-understood and comprehended in existing law beyond any possibility for fairminded disagreement.

The initial indictment provides: "On this the 25th day of September, 2009, the Grand Jury of the Parish of Caddo, State of Louisiana, charges that on or about the 13th day of July, 2009, at and in the Parish, District and State aforesaid, Lorenzo Jefferson committed the offense of Second Degree Murder as defined by R.S. 14:30.1 in that he committed second degree murder of Gary Maxie, Jr." [doc. # 16-3, p. 16]. The State subsequently amended the indictment to read as follows: "[O]n or about July 13, 2009, at and in the Parish, District and State aforesaid, Lorenzo Jefferson committed the offense of R.S. 14:30.1-Second Degree Murder [and] R.S. 14:30.1 & 14:27-Attempted Second Degree Murder in that he Count 1: committed second degree murder of Gary Maxie, Jr. [and] Count 2: attempted to commit second degree murder of Noel Steele . . . ." *Id.* at 15.

With respect to Petitioner's first and second ineffective assistance arguments—that the indictments were defective because they were in "short form" and did not list each element of the charged crimes— the Court refers to *State v. Liner*, 373 So. 2d 121, 122 (La. 1979), where the Louisiana Supreme Court reviewed and upheld a similar indictment. There, the indictment stated "that defendant . . . committed first degree murder of [the victim]; contrary to the provisions of R.S. 14:30 . . . ." *Id.* The court held that the indictment complied with LA. CODE CRIM. PROC. art. 465, which prescribes specific language that the State may use in an indictment. The court also noted that the Louisiana Supreme Court has consistently upheld the constitutionality of these type of "short form" indictments. *Id.* The court further observed, in response to the defendant's argument that the "short form" indictment did not recite each essential element of the crime, that "the recital of the details of the offense is more properly reserved to a bill of particulars." *Id.*

Here, there is nothing to suggest that the trial court would have granted a motion to quash

based on the form and substance of the indictments. As the *Liner* court stated, the constitutionality of "short form" indictments has been consistently upheld. Moreover, the indictments at issue clearly complied with Article 465. They set forth the identify of the victims, the dates of the crimes, and the pertinent statutes. As to Petitioner's claim that the indictments failed to list each element of the crime, the record reveals that the State provided Petitioner with a detailed bill of particulars.[1] [doc. # 16-3, p. 21]. Consequently, Petitioner fails to demonstrate deficient performance or actual prejudice. *See Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.").

Next, Petitioner claims that counsel should have moved to quash the indictment because the grand jury foreman did not endorse it and because it was not returned in open court. LA. CODE CRIM. PROC. art. 383, in pertinent part, states that an indictment shall be signed by the grand jury foreman and returned in open court. Here, the record does not reveal whether the indictments were returned in open court. In addition, the indictments contained in the record provided do not display the requisite signature. [doc. # 16-3, p. 15-16].

Despite the apparent lack of endorsement, and assuming for purposes of this report and recommendation that the indictment was in fact not signed by the grand jury foreman, rather than that a redacted version of the signed indictment was filed into the record, the Court cannot say that Petitioner suffered any prejudice. To explain, if counsel filed a successful motion to quash,

---

[1] A defendant may request a bill of particulars to provide "more specifically the nature and cause of the charge . . . ." LA. CODE CRIM. PROC. art. 484.

the State would have undoubtedly cured the deficiency by directing the foreman to sign the indictments. Alternatively, the State would have had little difficulty securing a new indictment given the strong inculpatory evidence presented. *See Brown v. Cain*, 337 F.3d 546, 549-50 (5th Cir. 2003) (finding no ineffective assistance for failure to file a motion to quash the indictment where a successful motion would have simply caused the State to obtain a second indictment to correct the error); *Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003) (holding that if the petitioner had been successful in quashing his indictment, he would have only delayed the trial because "the State of Louisiana would have sought and obtained a second indictment.").

As to Petitioner's argument that the indictments were not returned in open court, Petitioner has failed to carry his burden of proof. He fails to substantiate his claims by demonstrating that the indictments were not returned accordingly. *See Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994) (noting that *habeas corpus* petitioners claiming ineffective assistance of counsel bear the burden of proof). That notwithstanding, Petitioner also fails to demonstrate that counsel's decision was deficient or prejudicial. As to the reasonableness of counsel's decision, deciding whether to file a motion to quash is generally a matter of professional judgment. *Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965). With respect to prejudice, even assuming counsel had successfully moved to quash the indictment, counsel would have only succeeded in delaying the trial because the State would have simply procured a new indictment.

Turning to Petitioner's final ineffective assistance claim, Petitioner appears to contend that counsel should have filed a motion to quash on the basis that the indictments were not supported by sufficient evidence. This, however, "is not a proper ground upon which a motion to

quash may be granted."[2]  *State v. Ray*, 721 So. 2d 974, 976 (La. App. 3 Cir. 1998); *see also State v. Jordan*, 719 So. 2d 556, 563 (La. App. 4 Cir. 1998) (finding improper a defendant's claim that the State did not have sufficient evidence to support the indictment).  Accordingly, counsel was not deficient for, and prejudice did not arise from, counsel's failure to raise this meritless argument.

Ultimately, Petitioner fails to overcome the deference owed to the state *habeas* court in that he fails to show that the court's denial constituted an error beyond any possibility for fairminded disagreement.  Petitioner's claim should be **DENIED**.

C. Claim Three: Insufficient Evidence

Petitioner claims that the evidence presented at trial was insufficient to find him guilty of the charged crimes.  [doc. # 1-2, p. 8].  In particular, he argues that the State failed to produce any medical documents, DNA evidence, or other physical evidence identifying him as the perpetrator.  *Id.*

When a habeas petitioner asserts that the evidence presented was insufficient to support his conviction, the limited question before a federal *habeas* court is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002).  A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443

---

[2] Articles 3383, 532, and 533 in the Louisiana Code of Criminal Procedure set forth the grounds upon which a defendant can move to quash an indictment.  *See State v. Jones*, 144 So. 3d 120, 122 (La. App. 4 Cir. 2014).

U.S. at 319. The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

Here, the Louisiana appellate court properly invoked and applied the *Jackson* standard. *See Jefferson*, 91 So. 3d at 1011. The court began by referencing the definitions of second degree murder and attempt. *Id.* LA. REV. STAT. § 14:30.1(A)(1) defines second degree murder as "the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm." LA. REV. STAT § 14:27(A) defines attempt as follows: "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose." The appellate court then set forth the relevant testimony and evidence presented at trial:

> Regarding the attempted second degree murder of Steele, Jackson testified that he saw Jefferson shoot Steele. Steele testified he was shot when the defendant "walked away from me, he turned around and immediately just bam, you know, like a draw or something." Steele was thus certain that the defendant, his friend for over 15 years, was responsible for shooting and almost killing him. In addition, Davis testified that the defendant went outside with a gun immediately prior to her hearing the gun shots. Thus, the state offered sufficient evidence that the defendant shot Steele at close range, indicating an intent to inflict great bodily harm.
>
> With respect to the victim, Maxie, the state presented sufficient evidence for the trier of fact to conclude that Jefferson fired several shots at the victim and ultimately killed him. Jackson positively identified the defendant in a photo lineup and at trial as the person who shot Steele. In addition, Jackson testified that he heard Maxie talking to the defendant after the initial shooting of Steele and prior to several more

> gunshots. While he did not see Jefferson shoot Maxie, Jackson testified that the defendant was the only person with a gun and the only voice that he heard when Maxie was shot. Furthermore, Jackson testified that prior to that night he had never met Davis, Steele, or the defendant.
>
> At trial, Steele also testified about the events surrounding Maxie's death. After he was shot, he testified that he hid under the house when he realized his injuries prevented him from running. While he was hiding, Steele heard Maxie ask the defendant why he had shot Steele. At the time, Steele heard at least two more shots being fired.
>
> While no gun was ever discovered in this case, the state did produce evidence linking the defendant to the shooting of Maxie. First of all, Jefferson was the only individual identified with a weapon which was seen by Davis and Jackson. In addition, the state provided expert testimony that all of the bullets were fired from the same gun.
>
> In addition to the eyewitness testimony, the state produced forensic evidence revealing a close range shooting of Maxie while he was seated in the car and the DNA results of the blood on the car matching Maxie's blood. Additionally, a phone found in the car was determined to belong to the defendant.

*Jefferson*, 91 So. 3d at 1012-13.

Applying the *Jackson* standard, the appellate court held: "Since the defendant was the only person identified with a gun during the shooting and identified driving away with the victim's car, it was reasonable for the trial court to find that the state met its burden of proving that Jefferson was guilty of second degree murder." Here, a review of the state court record shows that the appellate court's application of *Jackson* was not objectively unreasonable. This claim should be **DENIED**.

## Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for writ of *habeas corpus* filed by Petitioner Lorenzo Jefferson, [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by

this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 19th day of December, 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE